FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 JUN 22 PM 1:09

DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
      v.                       )      Civil No. 6:18-cv-982-0rl-18GJK
                               )
NDAIZIWEI KAYA CHIPUNGU and    )
SOCIETY FINANCIAL SOLUTIONS, LLC,  )
                               )
            Defendants.        )

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America, for its complaint against Ndaiziwei Kaya Chipungu and

Society Financial Solutions, LLC, alleges the following:

1.     This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, and anyone

in active concert or participation with them, from:

> a. acting as federal tax return preparers or requesting, assisting in, or
> directing the preparation or filing of federal tax returns, amended
> returns, or other related documents or forms for any person or entity
> other than themselves;
>
> b. preparing or assisting in preparing federal tax returns that they know
> or reasonably should know would result in an understatement of tax
> liability or the overstatement of federal tax refund(s) as penalized by
> 26 U.S.C. § 6694;
>
> c. owning, operating, managing, working in, investing in, providing
> capital or loans to, receiving fees or remuneration from, controlling,
> licensing, consulting with, or franchising a tax return preparation
> business;
>
> d. training, instructing, teaching, and creating or providing cheat sheets,
> memoranda, directions, instructions, or manuals, pertaining to the
> preparation of federal tax returns;

e.  maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

f.  engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

g.  engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to disgorge to the United States the gross receipts that Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC received (in the form of tax preparation fees) for the preparation of federal tax returns.

## Authorization

2.  This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3.  Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Ndaiziwei Kaya Chipungu resides in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

## Defendants

5.  Ndaiziwei Kaya Chipungu resides in Orlando, Florida.  Chipungu has been preparing tax returns for compensation since at least 2009.

6.     On or about May 23, 2011, Chipungu incorporated Kaya Chipungu, LLC, in Florida.  Chipungu was the sole member of Kaya Chipungu, LLC, and served as the registered agent.  On or about September 18, 2012, Chipungu changed the name of Kaya Chipungu, LLC to Society Tax, LLC.  On or about September 26, 2012, Chipungu changed the name of Society Tax, LLC to Society Financial Solutions, LLC.  Chipungu was the sole member of Society Financial Solutions, LLC, and served as the registered agent.  Chipungu created Kaya Chipungu, LLC, later known as Society Financial Solutions, LLC, in order to own a tax preparation store through the entity.

7.     On or about April 30, 2015, Chipungu listed her cousin (and employee of Chipungu and/or Society Financial Solutions, LLC) as a second manager on Society Financial Solutions, LLC's annual report filed with the Florida Secretary of State.  Chipungu, however, is the sole owner of Society Financial Solutions, LLC.  Society Financial Solutions, LLC is currently inactive according to the Florida Secretary of State.

8.     Chipungu and Society Financial Solutions, LLC operate a tax preparation store in Winter Park, Florida under the names Society Financial Solutions, SFS Tax Services, and Society Financial Group, LLC (which, according to the Florida Secretary of State, is not a registered LLC).

9.     Chipungu prepares tax returns for compensation.  In addition to personally preparing tax returns for compensation, Chipungu, as the owner of Society Financial Solutions, LLC, employs individuals, directly or through Society Financial Solutions, LLC, who prepare tax returns for compensation.

**Background**

10.     LBS Tax Services ("LBS") began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette. In 2011, Gachette began franchising the LBS name through Loan Buy Sell, Inc., a corporation organized in the State of Florida, to his employees in order to broaden his revenue base. On November 16, 2016, the United States District Court for the Middle District of Florida enjoined Gachette from preparing federal tax returns and owning, operating, and franchising a tax preparation business, and ordered him to disgorge his ill-gotten gains. *See United States v. Walner Gachette*, 6:14-cv-1539 (M.D. Fla.).

11.     Chipungu began working at LBS in 2008. From the fall of 2008 through 2009, Chipungu worked as a tax return preparer at an LBS office in Maitland, Florida. In 2010, Chipungu worked as an office manager and also prepared tax returns at that location. In 2011 and 2012, Chipungu worked as a District Sales Manager ("DSM") at that office. In 2013, Chipungu (through Society Financial Solutions, LLC) owned an LBS store in Houston, Texas, where she also served as the DSM. Gachette directly owned these LBS stores and oversaw Chipungu. While working at LBS, Chipungu also served as an "Area Developer," a job that entailed serving as an intermediary between Gachette and the DSMs of tax preparation stores that Gachette directly owned, and ensuring that those stores were following LBS policies.

12.     On or about May 14, 2013, the State of Texas sued Society Financial Solutions, LLC, which operated a tax preparation store at 920 FM 1969 W. in Houston, Texas. On or about January 10, 2014, a Texas court enjoined Society Financial Solutions, LLC from marketing, offering, promoting, distributing, or advertising tax preparation services to Texas consumers. *See State of Texas v. LBS Tax Service, et al.*, No. 2013-17062 (Harris County Texas, 11th Judicial District).

4

13.     While working at Gachette's LBS tax stores, Chipungu prepared tax returns and solicited business at large, retail business centers, such as Wal-Mart, and private locations, such as apartment complexes.  Chipungu followed the policies instituted by LBS with respect to the preparation of tax returns.  Following the cessation of her employment at LBS, Chipungu has continued to prepare tax returns and to solicit business in the LBS-established improper manner at her tax preparation store in Winter Park, Florida.

14.     When managing and owning an LBS store, and when owning and operating her own tax preparation stores, Chipungu prepared tax returns for customers and oversaw employees who prepared tax returns.

15.     In addition to owning and operating a tax preparation store (directly or through Society Financial Solutions, LLC), Chipungu personally prepared at least 1,081 tax returns from 2011 through 2018, including the following number of tax returns identifying her as the paid preparer in 2014, 2015, 2016, 2017, and 2018:

| Processing Year | Total Number of Tax Returns Prepared | Number of Tax Returns Claiming a Refund | Percentage of Tax Returns Claiming a Refund |
|---|---|---|---|
| 2014 | 140 | 132 | 94% |
| 2015 | 123 | 117 | 95% |
| 2016 | 150 | 143 | 95% |
| 2017 | 229 | 217 | 94% |
| 2018 | 176 | 156 | 88% |

16.     Because Chipungu and her employees often do not identify themselves as the paid preparer on the tax returns that they prepare, it is difficult to determine the total number of tax returns that Chipungu personally prepared.

## The Defendants' Activities

17.     The Defendants prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the United States Treasury.

18.     Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf. For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions, and by promising customers thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their tax returns.

19.     The Defendants make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds. After completing the returns, the Defendants falsely tell the customers that these forms legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms and the higher refund that the Defendants claimed. The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return. These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

20.     The Defendants request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

21.     The Defendants engage in unlawful tax return preparation practices including:

a.      Fabricating itemized deductions, including for unreimbursed employee business expenses and charitable contributions;

b.      Making false claims for the Earned Income Tax Credit;

c.      Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

d.      Improperly claiming false filing status, such as Head of Household;

e.      Fabricating businesses and related business income and expenses;

f.      Claiming education credits to which their customers are not entitled;

g.      Failing to identify the actual paid preparer of the tax return;

h.      Failing to provide customers with a copy of the completed tax return; and

i.      Charging deceptive and unconscionable fees.

### Bogus Schedule A Deductions

22.     The Defendants prepare tax returns reporting bogus itemized deductions on Form Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable income.

23.     For example, the Defendants prepare tax returns for customers that include Forms Schedule A making false claims for purported unreimbursed employee business expenses. Section 162 of the Internal Revenue Code governs trade or business expenses. The Defendants often claim deductions for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly for purported business miles driven by customers. The Defendants ask customers whether they incurred expenses for such personal expenditures such as cell phones and clothing, without explaining to customers that these expenses are actually non-deductible. If the customer responds that they had such expenses, the Defendants then report these non-

deductible expenses as deductible employee business expenses in amounts that the Defendants fabricate in order to maximize the customer's refund. In instances where customers do have actual qualifying expenses, such as for charitable contributions, the Defendants report a falsely inflated amount of the expense that the customer incurred, to improperly increase the tax refund claimed on the return.

24.     Chipungu wrongly believes that commuting mileage – the miles an employee drives to and from their place of employment – are deductible. Chipungu improperly reports non-deductible commuting mileage as deductible business mileage, often in very large amounts that Chipungu pulls from thin air and which do not accurately reflect any mileage actually driven by her customers, whether for commuting or for other purposes.

25.     Tax returns that the Defendants prepared from 2015 to 2018 show the same patterns of purported unreimbursed employee business expenses claimed in inexplicably high amounts that often exceed 50% of a customer's wages. The following chart shows tax returns that the Defendants prepared in 2015, 2016, 2017, and 2018 claiming unreimbursed employee business expenses, and the numbers of tax returns prepared each year that claimed EBE in an amount that equals or exceeds 20%, 30%, 40%, and 50% of the customer's reported wages:

| Processing Year | Number of Tax Returns Claiming EBE | Number of Returns Claiming EBE in Amount that Equals or Exceeds 20% of Reported Wages | Number of Returns Claiming EBE in Amount that Equals or Exceeds 30% of Reported Wages | Number of Returns Claiming EBE in Amount that Equals or Exceeds 40% of Reported Wages | Number of Returns Claiming EBE in Amount that Equals or Exceeds 50% of Reported Wages |
|---|---|---|---|---|---|
| 2015 | 111 | 111 | 104 | 98 | 91 |
| 2016 | 170 | 168 | 162 | 150 | 137 |
| 2017 | 170 | 163 | 138 | 92 | 50 |
| 2018 | 108 | 103 | 84 | 52 | 28 |

8

**Customers 1 and 2**

26.     For example, Chipungu prepared the joint 2014 federal income tax return and separate 2015 federal income tax returns of married Customers 1 and 2 of Longwood, Florida.

27.     Chipungu falsely told Customers 1 and 2 that commuting mileage and clothing expenses could be deducted on their tax return. Customer 2 questioned whether commuting mileage could actually be deducted, and Chipungu replied that it was deductible. Chipungu also told Customer 1 that he could deduct the value of his work uniforms, even though Customer 1's employer provided uniforms free of charge. Customers 1 and 2 trusted Chipungu because they believed her to be a professional who was knowledgeable about tax laws.

28.     On the joint 2014 tax return, Chipungu falsely reported on the Form Schedule A attached to the tax return that Customers 1 and 2 incurred unreimbursed employee business expenses totaling $32,807. In 2014, the combined wages of Customer 1 and 2 totaled $66,205; thus, the claimed employee business expenses constituted slightly less than 50% of their combined wages. Customers 1 and 2 did not incur a combined $32,807 in unreimbursed expenses related to their jobs in 2014. Chipungu did not ask Customer 1 and 2 any questions about possible expenses they incurred for their jobs, but only asked how much they spent on clothing and how many miles they drove between their home and their respective workplaces.

29.     The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses, such as business mileage or meals and entertainment expenses, claimed on the tax return. Of the purported $32,807 in unreimbursed employee business expenses, the filed return only identifies purported expenses for uniforms in the amount of $1,680, a cell phone in the amount of $1,420, and tools in the amount of $978.

30. As a result of the fabricated unreimbursed employee business expenses, Chipungu claimed a bogus refund in the amount of $3,972 on the 2014 tax return of Customers 1 and 2. Chipungu did not review the completed tax return with Customers 1 and 2, and did not give them a copy of the return.

31. Chipungu prepared separate 2015 tax returns for Customers 1 and 2.

32. Customer 1 received wages totaling $37,815 in 2015. Chipungu falsely reported on the Form Schedule A attached to the 2015 tax return for Customer 1 that Customer 1 incurred unreimbursed employee business expenses in the amount of $22,868, or more than 60% of his wages, in 2015. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $22,868 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $950, a cell phone in the amount of $600, and tools in the amount of $900. Chipungu also falsely claimed that Customer 1 made charitable contributions in the amount of $1,500. Customer 1 did not provide any of this information to Chipungu and was unaware that Chipungu reported it on the tax return because Chipungu did not review the tax return with Customer 1 and did not provide him with a copy once it was completed. As a result of the fabricated claims, Chipungu claimed a bogus tax refund in the amount of $3,646 on Customer 1's 2015 tax return.

33. Customer 2 received wages totaling $29,895 in 2015. Chipungu falsely reported on the Form Schedule A attached to the 2015 tax return for Customer 2 that Customer 2 incurred unreimbursed employee business expenses in the amount of $20,573, or more than 68% of her wages, in 2015. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported

$20,573 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $500 and a cell phone in the amount of $600 (the same amount claimed on Customer 1's 2015 tax return). Chipungu also falsely claimed that Customer 2 made charitable contributions in the amount of $1,500 (also the same amount claimed on Customer 1's 2015 tax return). Customer 2 did not provide any of this information to Chipungu and was unaware that Chipungu reported it on the tax return because Chipungu did not review the tax return with Customer 2 and did not provide her with a copy once it was completed. As a result of the fabricated claims, Chipungu claimed a bogus tax refund in the amount of $2,097 on Customer 2's 2015 tax return.

### Customers 3 and 4

34.     Customers 3 and 4 of Orlando, Florida, had their 2014 and 2015 federal income tax returns prepared at the Society Financial Solutions, LLC store in Winter Park.

35.     Customers 3 and 4 provided the preparer with copies of their Forms W-2. Customer 3 worked for Reebok and Adidas in 2014 and Adidas in 2015, and Customer 4 worked for Bath and Body Works in 2014. Customer 4 was not employed in 2015. Customers 3 and 4 did not discuss any job-related expenses with the preparer and did not provide any information or documents pertaining to any job-related expenses.

36.     On the Schedule A attached to the 2014 tax return, the preparer falsely reported that Customer 3 and 4, whose wages totaled $76,669, incurred unreimbursed employee business expenses in the amount of $34,317. The preparer falsely reported that Customer 3 incurred job-related expenses in the amounts of $12,205 for purportedly driving his personal vehicle 21,795 miles for his job, $2,600 for parking fees, tolls, and transportation, $1,440 for other business-

related expenses, and $3,984 for meals and entertainment expenses. Customer 3 did not provide these purported expenses to the preparer.

37.     The preparer falsely reported that Customer 4, whose wages totaled $6,589, incurred unreimbursed employee business expenses in the amount of $11,653, or more than 175% of her wages.  If the preparer's false claim is believed, Customer 4 had to pay more almost twice what she received in wages in order to work at her job at Bath and Body Works.  The phony job-related expenses included $7,833 for purportedly driving her personal vehicle 13,988 miles for her job, $1,800 for parking fees, tolls, and transportation, $750 for other business-related expenses, and $2,540 (of which 50%, or $1,270, is calculated to be claimed as an expense) for meals and entertainment expenses. Customer 4 did not provide these purported expenses to the preparer.

38.     The preparer also claimed a bogus state and local income tax deduction in the amount of $2,970, and a charitable contribution in the amount of $2,250 on the 2014 tax return without the knowledge of Customer 3 and 4. The preparer did not review the completed tax return with Customer 3 and 4 and did not provide a copy to Customer 3 and 4.

39.     As a result of these fabricated expenses, the preparer claimed a bogus refund of $7,476 on the 2014 tax return of Customer 3 and 4.  Customers 3 and 4 were charged $775 to have this tax return prepared.

40.     On the Schedule A attached to the 2015 tax return, the preparer falsely reported that Customer 3, whose wages totaled $60,180, incurred unreimbursed employee business expenses in the amount of $25,703. The preparer falsely reported that Customer 3 incurred job-related expenses in the amounts of $16,097 for purportedly driving his personal vehicle 27,994 miles for his job, $2,865 for parking fees, tolls, and transportation, $1,203 for other business-

related expenses, and $4,385 for meals and entertainment expenses. Customer 3 did not provide these purported expenses to the preparer.

41.     The preparer also claimed a bogus state and local income tax deduction in the amount of $1,643, and a charitable contribution in the amount of $2,345 on the 2015 tax return without the knowledge of Customer 3 and 4. The preparer did not review the completed tax return with Customer 3 and 4 and did not provide a copy to Customer 3 and 4.

42.     As a result of these fabricated expenses, the preparer claimed a bogus refund of $5,386 on the 2015 tax return of Customer 3 and 4.  Customers 3 and 4 were charged over $600 to have this tax return prepared.

### Customers 5 and 6

43.     A preparer at the Society Financial Solutions, LLC store in Winter Park prepared the 2016 federal income tax return of Customers 5 and 6 of Apopka, Florida.  Customer 5 also had his 2015 federal income tax return prepared at this store.  These two tax returns both identify Chipungu as the paid preparer, but she did not actually prepare the tax returns.

44.     On the joint 2016 tax return, the preparer falsely reported on the Form Schedule A attached to the tax return that Customers 5 and 6 incurred unreimbursed employee business expenses totaling $27,282.  In 2016, the combined wages of Customer 5 and 6 totaled $76,809. Customers 5 and 6 did not incur a combined $27,282 in unreimbursed expenses related to their jobs in 2016.  The preparer asked Customer 5 whether he purchased a "suit" for his job, and falsely told Customer 5 that any expenses towards a "suit" was deductible. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $27,282 in unreimbursed employee business expenses, the filed return only identified purported expenses for uniforms in the amount

of $600, a cell phone in the amount of $900, uniforms (again) in the amount of $300, a cell

phone (again) in the amount of $900, and "work supplies" in the amount of $1,110. Customers 5

and 6 did not provide these amounts to the preparer, do not know how the preparer calculated

these amounts, and were not aware that this false information was reported on their tax return

because the preparer did not provide Customers 5 and 6 with a copy of the completed tax return.

45.     As a result of these false claims, the 2016 tax return of Customers 5 and 6 claimed

a bogus refund in the amount of $5,592.

46.     Customer 5 received wages totaling $37,500 in 2015. The preparer falsely

reported on the Form Schedule A attached to the 2015 tax return for Customer 5 that Customer 5

incurred unreimbursed employee business expenses in the amount of $24,644, or more than 65%

of his wages, in 2015. The filed tax return did not include a Form 2106, used to identify and

describe the unreimbursed employee business expenses claimed on the tax return. Of the

purported $24,644 in unreimbursed employee business expenses claimed, the filed return only

identified purported expenses for uniforms in the amount of $1,080, a cell phone in the amount

of $1,440 (a commonly reported cell phone expense amount for several customers, as seen in

many examples, *infra*), and dry cleaning in the amount of $50. Customer 5 did not provide any

of this information to the preparer and was unaware that the preparer reported it on the tax return

because the preparer did not review the tax return with Customer 5 and did not provide him with

a copy once it was completed.

47.     As a result of the fabricated claims, the preparer claimed a bogus tax refund in the

amount of $2,198 on Customer 5's 2015 tax return.

### Customer 7

48.     A preparer at the Society Financial Solutions, LLC store in Winter Park prepared the 2015 and 2016 federal income tax returns of Customer 7 of Orlando, Florida.  Customer 7 works in human resources for Hilton, travels 3 or 4 times each year for her job and, when she does travel, is provided with a corporate credit card to pay for all of her expenses.

49.     On the 2015 tax return, the preparer falsely reported on the Form Schedule A attached to the tax return that Customer 7 incurred unreimbursed employee business expenses totaling $22,052.  The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $22,052 in unreimbursed employee business expenses, the filed return only identified purported expenses for uniforms in the amount of $1,841, a cell phone in the amount of $1,240, and dry cleaning in the amount of $1,004. Customer 7 did not incur these purported expenses in 2015 and did not inform the preparer that she incurred such expenses.

50.     As a result of these false claims, the preparer claimed a bogus refund in the amount of $7,871 on Customer 7's 2015 tax return.

51.     The 2016 tax return identifies Chipungu as the paid preparer, but she did not actually prepare the tax return. Customer 7 emailed her tax-related documents (Forms W-2 and mortgage interest statement) to a preparer at Society Financial Solutions and did not physically go to the store to have her 2016 tax return prepared.

52.     The preparer falsely reported on the Form Schedule A attached to the 2016 tax return that Customer 7 incurred unreimbursed employee business expenses in the amount of $19,268 in 2016. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported

$19,268 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $2,500, a cell phone in the amount of $1,240, and dry cleaning in the amount of $700. Customer 7 did not provide any of this information to the preparer and was unaware that the preparer reported it on the tax return because the preparer did not review the tax return with Customer 7.

53.     As a result of the fabricated claims, the preparer claimed a bogus tax refund in the amount of $7,686 on Customer 7's 2016 tax return.

**Customer 8**

54.     Chipungu prepared the 2013, 2014, 2015, and 2016 federal income tax returns of Customer 8 of Sanford, Florida.

55.     On all four of the tax returns, Chipungu claimed fabricated unreimbursed employee business expenses, totaling $21,239 on the 2013 return, $20,669 on the 2014 return, $22,595 on the 2015 return, and $31,060 (jointly with his wife) on the 2016 return. During these years, Customer 8 received wages totaling $30,338, $29,452, $33,743, and (together with his wife) $81,450, respectively. Thus, from 2013 through 2015, Chipungu falsely claimed that Customer 8 incurred job-related expenses ranging between 66% and 71% of his wages; in 2016, Chipungu falsely claimed that Customer 8 and his wife incurred job-related expenses of over 38% of their combined wages. Customer 8 did not incur job-related expenses in these large amounts, did not inform Chipungu that he or his wife incurred these expenses, and was not aware that these expenses were reported on his tax returns because Chipungu did not provide him with copies of all of these completed returns.

56.     As a result of these false claims, on Customer 8's 2013, 2014, 2015, and 2016 tax returns, Chipungu claimed bogus refunds in the amounts of $3,600, $3,437, $3,986, and $6,699, respectively.

**Customers 9 and 10**

57.     Chipungu prepared the 2016 federal income tax return of Customers 9 and 10 of Sanford, Florida.  A preparer at Society Financial Solutions, LLC prepared the 2015 tax return of Customers 9 and 10.  Customer 9 is a fitness instructor and Customer 10 is a nurse.

58.     Customers 9 and 10 received wages totaling $102,045 in 2016. On the 2016 tax return, Chipungu falsely reported on the Form Schedule A that Customers 9 and 10 incurred unreimbursed employee business expenses in the amount of $30,857 in 2016. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $30,857 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $1,500, a cell phone in the amount of $980, uniforms (again) in the amount of $1,200, a cell phone (again) in the same amount of $980, and "cont education for work" in the amount of $400. Aside from non-deductible costs for commuting to and from their jobs, the only job-related expense that Customers 9 and 10 incurred were for Customer 10's scrubs for her nursing job. Customers 9 and 10 did not provide any of these claimed expenses to Chipungu and did not incur $30,857 in job-related expenses in 2016.

59.     As a result of these false claims, Chipungu claimed a bogus refund in the amount of $6,456 on the 2016 tax return of Customers 9 and 10.

60.     Customers 9 and 10 received wages totaling $89,088 in 2015. On the 2015 tax return, the preparer falsely reported on the Form Schedule A that Customers 9 and 10 incurred

unreimbursed employee business expenses in the amount of $42,118, or over 47% of their

wages, in 2015. The filed tax return did not include a Form 2106, used to identify and describe

the unreimbursed employee business expenses claimed on the tax return. Of the purported

$42,118 in unreimbursed employee business expenses claimed, the filed return only identified

purported expenses for uniforms in the amount of $2,230, a cell phone in the amount of $1,440,

"continued education" in the amount of $200, a cell phone (again) in the amount of $1,380, and

dry cleaning in the amount of $920. Customers 9 and 10 did not provide any of these claimed

expenses to the preparer and did not incur $42,118 in job-related expenses in 2015.

61.     As a result of these false claims, the preparer claimed a bogus refund in the

amount of $3,095 on the 2015 tax return of Customers 9 and 10.

**Customers 11 and 12**

62.     Chipungu prepared the 2014 and 2015 federal income tax returns of Customers 11

and 12 of Deltona, Florida, who were married but filed separate tax returns.  On both of their tax

returns for both years, Chipungu claimed fabricated unreimbursed employee business expenses.

63.     On Customer 11's 2014 tax return, Chipungu falsely claimed job-related expenses

in the amount of $20,535, or over 71% of the $28,581 in wages that Customer 11 received in

2014.  The filed tax return did not include a Form 2106, used to identify and describe the

unreimbursed employee business expenses claimed on the tax return. Of the purported $20,535

in unreimbursed employee business expenses claimed, the filed return only identified purported

expenses for uniforms in the amount of $1,975 and a cell phone in the amount of $960.

Chipungu also falsely claimed that Customer 11 donated $645 to charity.  Customer 11 did not

incur these expenses and did not provide these amounts to Chipungu.  Chipungu did not tell

Customer 11 that these amounts were being reported on her tax return and did not provide

Customer 11 with a copy of the completed return. As a result of the fabricated expenses,

Customer 11's 2014 tax return claimed a bogus refund in the amount of $3,903.

64.     On Customer 11's 2015 tax return, Chipungu falsely claimed job-related expenses

in the amount of $14,820, or over 86% of the $17,228 in wages that Customer 11 received in

2014. Chipungu falsely reported on the attached Form 2106 that Customer 11 incurred job-

related expenses in the amounts of $10,322 for purportedly driving her personal vehicle 17,952

miles for her job, $2,600 for parking fees, tolls, and transportation, and $3,795 (of which 50%, or

$1,898, is calculated to be claimed as an expense) for meals and entertainment expenses.

Customer 11 did not provide these purported expenses to the preparer.  Chipungu did not provide

Customer 11 with a copy of the completed return.  As a result of these fabricated expenses,

Chipungu claimed a bogus refund of $2,712 on Customer 11's 2015 tax return.

65.     On Customer 12's 2014 tax return, Chipungu falsely claimed job-related expenses

in the amount of $32,055, or over 75% of the $42,663 in wages that Customer 12 received in

2014.  The filed tax return did not include a Form 2106, used to identify and describe the

unreimbursed employee business expenses claimed on the tax return. Of the purported $32,055

in unreimbursed employee business expenses claimed, the filed return only identified purported

expenses for uniforms in the amount of $2,985, a cell phone in the amount of $1,440, and tools

in the amount of $1,055. Chipungu also falsely claimed that Customer 12 donated $1,245 to

charity.  Customer 12 did not incur these expenses and did not provide these amounts to

Chipungu.  Chipungu did not tell Customer 12 that these amounts were being reported on his tax

return and did not provide Customer 12 with a copy of the completed return. As a result of the

fabricated expenses, Customer 12's 2014 tax return claimed a bogus refund of $6,425.

66. Chipungu prepared Customer 12's 2015 tax return, but is not identified as the paid preparer on the return. On Customer 12's 2015 tax return, Chipungu falsely claimed job-related expenses in the amount of $26,605, or over 64% of the $40,947 in wages that Customer 12 received in 2014. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $26,605 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $1,505, a cell phone in the amount of $1,440 (the same amount reported on the 2014 tax return), and tools in the amount of $650. Chipungu also falsely claimed that Customer 12 donated $2,310 to charity. Customer 12 did not provide these purported expenses to the preparer. Chipungu did not provide Customer 12 with a copy of the completed return. As a result of these fabricated expenses, Chipungu claimed a bogus refund of $6,696 on Customer 12's 2015 tax return.

**Customer 13**

67. Chipungu prepared the 2014 and 2015 federal income tax returns of Customer 13 of Casselberry, Florida. Customer 13 only provided Chipungu with copies of his Forms W-2 from his job as a water mitigation technician and his ID. On both of these tax returns, Chipungu claimed fabricated unreimbursed employee business expenses.

68. On Customer 13's 2014 tax return, Chipungu falsely claimed job-related expenses in the amount of $26,805, or over 67% of the $39,533 in wages that Customer 13 received in 2014. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $26,805 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $2,445, a cell phone in the amount of $1,140, and tools

in the amount of $975. Customer 13 did not incur these expenses, did not provide these amounts to Chipungu, and was unaware that Chipungu reported these amounts on his tax return. Chipungu did not provide Customer 13 with a copy of the completed return. As a result of the fabricated expenses, Customer 13's 2014 tax return claimed a bogus refund of $3,924.

69.     On Customer 13's 2015 tax return, Chipungu falsely claimed job-related expenses in the amount of $25,623, or over 69% of the $36,761 in wages that Customer 13 received in 2015. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $25,623 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $1,922 and a cell phone in the amount of $1,440. Customer 13 did not incur these expenses, did not provide these amounts to Chipungu, and was unaware that Chipungu reported these amounts on his tax return. Chipungu did not provide Customer 13 with a copy of the completed return. As a result of these fabricated expenses, Chipungu claimed a bogus refund of $3,611 on Customer 13's 2015 tax return.

**Customers 14 and 15**

70.     Chipungu prepared the joint 2014 federal income tax return and separate 2015 federal income tax returns of married Customers 14 and 15 of Longwood, Florida. Customer 14 worked for the State of Florida as a court clerk and Customer 15 worked at a factory and part time at Home Depot.

71.     On the joint 2014 tax return, Chipungu falsely reported on the Form Schedule A attached to the tax return that Customers 14 and 15 incurred unreimbursed employee business expenses totaling $43,906. In 2014, the combined wages of Customer 14 and 15 totaled $67,260; thus, the claimed employee business expenses constituted slightly more than 65% of

their combined wages. Customers 14 and 15 did not incur a combined $43,906 in unreimbursed expenses related to their jobs in 2014. Chipungu did not discuss the claimed job-related expenses with Customers 14 and 15.

72.     The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses, and to identify which of the married customers purportedly incurred the job-related expenses. Of the purported $43,906 in unreimbursed employee business expenses, the filed return only identifies purported expenses for uniforms in the amount of $2,070 and a cell phone in the amount of $1,440.

73.     As a result of the fabricated unreimbursed employee business expenses, and a bogus education credit, discussed at paragraphs 130-132, *infra*, Chipungu claimed a bogus refund of $6,285 on the 2014 tax return of Customers 14 and 15. Chipungu did not review the completed tax return with Customers 14 and 15, and did not give them a copy of the return.

74.     Chipungu prepared separate 2015 tax returns for Customers 14 and 15.

75.     Customer 14 received wages totaling $33,410 in 2015 working for the State of Florida. Chipungu falsely reported on the Form Schedule A attached to the 2015 tax return for Customer 14 that Customer 14 incurred unreimbursed employee business expenses in the amount of $23,979, or more than 71% of her wages, in 2015. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $23,979 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $2,260 and a cell phone in the amount of $1,440. Chipungu also falsely claimed that Customer 14 made charitable contributions in the amount of $3,500. Customer 14 did not incur any of these claimed expenses, did not provide any of this information to Chipungu, and was unaware that Chipungu reported it

on the tax return because Chipungu did not review the tax return with Customer 14 and did not provide her with a copy once it was completed. As a result of the fabricated claims, Chipungu claimed a bogus tax refund in the amount of $2,590 on Customer 14's 2015 tax return.

76.     Customer 15 received wages totaling $36,534 in 2015. Chipungu falsely reported on the Form Schedule A attached to the 2015 tax return for Customer 15 that Customer 15 incurred unreimbursed employee business expenses in the amount of $24,966, or more than 68% of his wages, in 2015. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $24,966 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $2,640 and a cell phone in the amount of $2,070. Chipungu also falsely claimed that Customer 15 made charitable contributions in the amount of $3,550. Customer 15 did not incur any of these claimed expenses, did not provide any of this information to Chipungu, and was unaware that Chipungu reported it on the tax return because Chipungu did not review the tax return with Customer 15 and did not provide him with a copy once it was completed. As a result of the fabricated claims, Chipungu claimed a bogus tax refund in the amount of $2,868 on Customer 15's 2015 tax return.

**Phony Claims for the Earned Income Tax Credit**
**and Failure to Comply with Due Diligence Requirements**

77.     The Defendants prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

78.     The EITC is a refundable tax credit available to certain low-income working people. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. *See* 26 U.S.C. § 32 and the accompanying Treasury Regulations.

Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

79.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and $13,650, and decreases as income increases beyond $17,830. Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range." For tax year 2014, the maximum EITC was $6,143 and was available to eligible individuals with three dependent children who earned income between $13,650 and $17,830.

80.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

81.     The Defendants falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

82.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." Tax return preparers must also document their compliance with these requirements and keep that documentation for three years.

83.     The Defendants fail to comply with the due diligence requirements. The Defendants show an intentional disregard for the tax laws and in particular for the due diligence requirements.

### Fabricated Schedule C Business Income and Expenses

84.     The Defendants prepare tax returns reporting non-existent businesses on bogus Forms Schedule C. On some of these returns, the Defendants report substantial business income, but little or no expenses. On other returns, the Defendants report substantial expenses, but little or no income. The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

**Customer 16**

85.     For example, Chipungu prepared the 2014 and 2015 federal income tax returns of Customer 16 of Orlando, Florida.  Customer 16 was employed at Relief Restoration LLC, a company that handles water mitigation and related repairs.  Customer 16 and his girlfriend, with whom Customer 16 lives, also own and operate a home business. Customer 16 provided Chipungu copies of his Form W-2, ID, and birth certificates and social security cards for his claimed dependents (including his girlfriend's son).

86.     On the Schedule C attached to Customer 16's 2014 tax return, Chipungu falsely reported that Customer 16's home business was called "Relief Restoration," the name of Customer 16's employer as identified on his Form W-2.  Chipungu falsely reported that the home business received only $5,926 in gross receipts, but incurred $22,773 in expenses.  The fabricated expenses included $295 for advertising, $16,216 for car and truck expenses (based on purportedly driving 28,958 miles for the home business), $2,575 for supplies, $1,821 for meals and entertainment, $840 for a cell phone, and $1,026 for uniforms.

87.     Chipungu also falsely claimed the son of Customer 16's girlfriend as a dependent on Customer 16's 2014 tax return, even though Customer 16 did not support the son of his girlfriend and Chipungu knew that Customer 16's girlfriend resided with Customer 16 and supported her son.

88.     By falsely claiming that the home business lost $16,847 and claiming a bogus dependent, Chipungu falsely reduced Customer 16's taxable income, and claimed a fabricated EITC in the amount of $2,334 and a bogus refund of $10,012 on Customer 16's 2014 tax return.

89.     Similarly, on the Schedule C attached to Customer 16's 2015 tax return, Chipungu falsely reported that Customer 16's home business was called "Relief Restoration,"

the name of Customer 16's employer as identified on his Form W-2. Chipungu falsely reported

that the home business received only $6,975 in gross receipts, but incurred $28,537 in expenses.

The fabricated expenses included $325 for advertising, $20,129 for car and truck expenses

(based on purportedly driving 29,920 miles for the home business), $3,202 for supplies, $1,991

for meals and entertainment, $1,440 for a cell phone (a commonly reported cell phone expense

amount for several customers, as seen in many examples, *infra*), and $950 for uniforms.

90.     Chipungu also falsely claimed the son of Customer 16's girlfriend as a dependent

on Customer 16's 2015 tax return, even though Customer 16 did not support the son of his

girlfriend and Chipungu knew that Customer 16's girlfriend resided with Customer 16 and

supported her son.

91.     By falsely claiming that the home business lost $21,562 and claiming a bogus

dependent, Chipungu falsely reduced Customer 16's taxable income, and claimed a fabricated

EITC in the amount of $2,997 and a bogus refund of $11,097 on Customer 16's 2015 tax return.

92.     Customer 16 was unaware that Chipungu reported these false business losses on

the Schedule C attached to his tax returns because Chipungu did not review the completed tax

returns with Customer 16 and did not provide him with copies of the tax returns.

**Customer 17**

93.     Chipungu prepared the 2014 and 2015 federal income tax returns of Customer 17

of Orlando, Florida. Customer 17 works as a nurse, for which she receives Forms W-2 from her

employers, and is Chipungu's sister-in-law. Customer 17 was not physically present with

Chipungu when the tax returns were prepared, but provided Chipungu copies of her Forms W-2,

bank statements, social security card, and receipts for travelling to and from her job while in the

process of moving to Orlando.

94. In 2014, Customer 17 received wages through her employment as a nurse totaling $65,483.

95. On the Schedule C attached to Customer 17's 2014 tax return, Chipungu falsely reported that Customer 17 had a "private nurse" business. Chipungu falsely reported that the home business received $4,050 in gross receipts, but incurred $30,157 in expenses. The fabricated expenses included $225 for advertising, $17,861 for car and truck expenses (based on purportedly driving 22,975 miles for the business), $920 for an office, $2,750 for supplies, $2,473 for travel, $2,038 for meals and entertainment, $1,440 for a cell phone, and $2,450 for uniforms. Customer 17 did not provide this information to Chipungu, and after learning of these claimed expenses during the IRS examination of the return, stated that "some of the numbers [Chipungu] just made up."

96. By falsely claiming that the non-existent business lost $30,157, Chipungu falsely reduced Customer 17's taxable income, and claimed a fabricated EITC in the amount of $923 and a bogus refund of $6,732 on Customer 17's 2014 tax return.

97. In 2015, Customer 17 received wages through her employment as a nurse totaling $66,336.

98. On the Schedule C attached to Customer 17's 2015 tax return, Chipungu falsely reported that Customer 17 had a "private nurse" business that received $2,747 in gross receipts, but incurred $35,965 in expenses. The fabricated expenses included $225 for advertising, $21,004 for car and truck expenses (based on purportedly driving 30,975 miles for the business), $990 for an office, $2,675 for supplies, $3,903 for travel, $2,488 for meals and entertainment, $2,450 for a cell phone, and $2,230 for uniforms. Customer 17 did not provide this information to Chipungu. After learning of these claimed expenses during the IRS examination of the return,

and specifically referring to the car and truck expenses and mileage claimed, Customer 17 stated

that Chipungu "must have made up those amounts like the others."

99.     By falsely claiming that the non-existent business lost $33,218, Chipungu falsely

reduced Customer 17's taxable income, and claimed a fabricated EITC in the amount of $2,375

and a bogus refund of $7,055 on Customer 17's 2015 tax return.

100.    Chipungu charged Customer 17 over $1,000 to prepare her 2015 tax return.

Chipungu never discussed the tax preparation fee with Customer 17, but deducted $1,038 from

Customer 17's tax refund.

**Customer 18**

101.    Chipungu prepared the 2014 and 2015 federal income tax returns of Customer 18

of Orlando, Florida.  Customer 18 was employed at a company that handles water mitigation and

related repairs, which issued him a Form W-2, and also worked part-time for a similar company.

Customer 18 provided Chipungu with copies of his ID, Form W-2, end-of-year daycare expense

statement for his children, and bank statements.

102.    On the Schedule C attached to Customer 18's 2014 tax return, Chipungu falsely

reported that Customer 18 received $10,225 in gross receipts through a business, but incurred

$28,028 in expenses.  The fabricated expenses included $225 for advertising, $17,675 for car and

truck expenses (based on purportedly driving 26,785 miles for the home business), $2,050 for

travel, $2,298 for meals and entertainment, $1,440 for a cell phone, $2,745 for uniforms, and

$1,595 for tools.

103.    Although Customer 18 provided a statement showing the amount he spent $1,288

on daycare in 2014, Chipungu falsely reported that Customer 18 spent $3,288 on day care, and

claimed a falsely inflated Child Care Credit in the amount of $600.

104.    By falsely claiming that the business lost $17,803, and claiming a falsely inflated Child Care Credit, Chipungu falsely reduced Customer 18's taxable income, and claimed a bogus refund of $4,624 on Customer 18's 2014 tax return.

105.    Similarly, on the Schedule C attached to Customer 19's 2015 tax return, Chipungu falsely reported that Customer 18 had a business that received $14,500 in gross receipts, but incurred $27,640 in expenses. The fabricated expenses included $19,563 for car and truck expenses (based on purportedly driving 29,500 miles for the business), $1,230 for travel, $2,635 for meals and entertainment, $1,440 for a cell phone, $1,972 for uniforms, and $400 for tools.

106.    By falsely claiming that the business lost $13,140, Chipungu falsely reduced Customer 18's taxable income, and claimed a bogus refund of $4,425 on Customer 18's 2015 tax return.

107.    Customer 18 did not provide Chipungu with the income and expenses claimed on the Forms Schedule C. During the IRS examination of his tax returns, Customer 18 met with Chipungu to discuss the false amounts reported on his tax returns. Chipungu went over the false amounts that she reported on the tax returns and told Customer 18 that everything she reported was correct.

108.    At the time Customer 18's tax returns were prepared, Chipungu did not discuss the claims that she reported on Customer 18's tax returns, but instead only told him what his refunds would be. Chipungu also did not initially provide Customer 18 with copies of his tax returns, but he had to go back to Chipungu and get a copy when he purchased a new home.

109. Chipungu did not discuss the tax preparation fees with Customer 18. Chipungu charged Customer 18 over $1,000 to prepare his 2014 tax return and almost $700 to prepare his 2015 tax return.

**Customers 19 and 20**

110. Chipungu prepared the 2014 and 2015 federal income tax returns of Customers 19 and 20 of Deltona, Florida. Customer 19 was employed as an electrician and Customer 20 was not employed. Customer 19's employer issued him a Form W-2. Customers 19 and 20 did not own or operate a business in 2014 or 2015.

111. On the Schedule C attached to the 2014 tax return of Customer 19 and 20, Chipungu falsely reported that Customer 19 owned an electrician business through which he purportedly received $5,575 in gross receipts, but incurred $19,826 in expenses. The fabricated expenses included $12,653 for car and truck expenses (based on purportedly driving 22,595 miles), $1,675 for supplies, $1,788 for meals and entertainment, $1,440 for a cell phone, and $2,270 for uniforms.

112. By falsely claiming that the non-existent business lost $14,251, Chipungu falsely reduced the taxable income of Customers 19 and 20, claimed a falsely inflated EITC in the amount of $5,460, and claimed a bogus refund of $7,646 on the 2014 tax return of Customers 19 and 20.

113. Similarly, on the Schedule C attached to the 2015 tax return of Customer 19 and 20, Chipungu falsely reported that Customer 19 owned an electrician business through which he purportedly received $4,720 in gross receipts, but incurred $21,369 in expenses. The fabricated expenses included $14,261 for car and truck expenses (based on purportedly driving 20,975

miles), $2,795 for supplies, $1,898 for meals and entertainment, $1,440 for a cell phone, and $975 for uniforms.

114.   By falsely claiming that the non-existent business lost $16,649, Chipungu falsely reduced the taxable income of Customers 19 and 20, claimed a falsely inflated EITC in the amount of $5,444, and claimed a bogus refund of $7,650 on the 2015 tax return of Customers 19 and 20.

115.   Customers 19 and 20 did not provide Chipungu with the income and expenses claimed on the Forms Schedule C. Chipungu did not discuss with Customers 19 and 20 the claims that she reported on their tax returns, and did not provide Customers 19 and 20 with copies of their tax returns.

**Customer 21**

116.   Chipungu prepared the 2014 and 2015 federal income tax returns of Customer 21 of Orlando, Florida. Customer 21 was employed at a company that sells time shares. Customer 21 conducted all of his work duties in the company office, and did not incur any expenses related to his job. In 2014, Customer 21's employer issued him both a Form W-2 and a Form 1099 reporting his income; in 2015, his employer issued only a Form W-2. Customer 21 emailed Chipungu copies of the Forms W-2 (and the Form 1099 for 2014), and was not physically present when Chipungu prepared the tax returns. Chipungu simply emailed Customer 21 copies of the tax returns once they were completed.

117.   Chipungu prepared a Schedule C attached to Customer 21's 2014 tax return, on Chipungu reported the $7,263 in gross receipts from the Form 1099 issued by Customer 21's employer. Chipungu then falsely reported that Customer 21 incurred $24,241 in expenses, generating a phony loss in the amount of $16,978. The fabricated expenses included $225 for

advertising, $13,432 for car and truck expenses (based on purportedly driving 23,985 miles), $2,345 for supplies, $1,525 for travel, $1,974 for meals and entertainment, $1,440 for a cell phone, and $2,025 for uniforms. Customer 21 did not incur any of these expenses and did not provide these fabricated amounts to Chipungu.

118.    By falsely reporting on the Schedule C that Customer 21 lost $16,978 through his employment, Chipungu falsely reduced Customer 21's taxable income, and claimed a bogus refund of $1,744 on Customer 21's 2014 tax return.

119.    On Customer 21's 2015 tax return, Chipungu reported fabricated expenses on the Schedule A attached to the tax return. Chipungu falsely claimed that Customer 21 incurred unreimbursed employee business expenses in the amount of $26,284, or over 55% of the $47,539 in wages that Customer 21 received in 2015. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $26,284 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $2,540 and a cell phone in the amount of $1,440 (the same amount as claimed on the Schedule C attached to the 2014 tax return). Customer 21 did not incur these expenses, did not provide these amounts to Chipungu, and was unaware that Chipungu reported these amounts on his tax return.

120.    As a result of these fabricated purported job-related expenses, Chipungu claimed a bogus refund of $2,641 on Customer 21's 2015 tax return.

**Customer 22**

121.    Chipungu prepared the 2013, 2014, 2015, and 2016 federal income tax returns of Customer 22 of Orlando, Florida.

122.    Customer 22 was married in 2013 and told Chipungu that she was married. Customer 22 was employed, and her husband owned and operated a home business.

123.    Despite knowing the Customer 22 was married, Chipungu reported Customer 22's filing status as single on her 2013 tax return.  On Customer 22's 2013 tax return, Chipungu falsely reported on the Schedule C attached to the return that Customer 22 owned a home "cruise agency" business through which Customer 22 received gross receipts totaling $5,223 and incurred expenses totaling $17,366. The fabricated expenses included $123 for advertising, $11,837 for car and truck expenses (based on purportedly driving 20,951 miles), $1,255 for supplies, $1,172 for meals and entertainment, $1,230 for a cell phone, and $1,423 for uniforms. Customer 22 did not have a business and did not receive this income or incur any of these expenses and did not provide these fabricated amounts to Chipungu. Although Customer 22's husband had a business, it likewise did not incur these fabricated expenses.

124.    By falsely reporting on the Schedule C that Customer 22 lost $12,143 through a business, Chipungu falsely reduced Customer 22's taxable income, claimed an inflated EITC in the amount of $3,559, and claimed a bogus refund of $8,249 on Customer 22's 2013 tax return.

125.    On the 2014, 2015, and 2016 tax returns of Customer 22, Chipungu claimed fabricated unreimbursed employee business expenses, totaling $18,235 on the 2014 return, $27,031 (including $1,440 for a cell phone) on the 2015 return, and $12,415 on the 2016 return. During these years, Customer 22 received wages totaling $33,235, $42,205, and $45,470, respectively.  Thus, from 2014 through 2016, Chipungu falsely claimed that Customer 22 incurred job-related expenses ranging between 27% and 64% of her wages. At most, Customer 22 actually incurred $500 in unreimbursed employee business expenses each of these years. Customer 22 did not provide the fabricated job-related expense amounts to Chipungu and was

34

not aware that these expenses were reported on her tax returns. As a result of these false claims, on Customer 22's 2014, 2015, and 2016 tax returns, Chipungu claimed bogus refunds in the amounts of $6,099, $3,437, $2,598, and $3,688, respectively.

### Intentionally Claiming an Improper Filing Status and Bogus Dependents

126.    The Defendants prepare tax returns reporting false filing status. Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of the customers' standard deduction, when the Defendants know that the customer does not qualify for Head of Household filing status.

127.    The Defendants file separate returns for married couples who are not living apart, improperly using the "Head of Household" or "Single" filing status, both of which are unavailable to married couples living together. Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each unlawfully receive a refund of $3,000 or more, by both falsely claiming Head of Household or single status and each claiming at least one dependent.

128.    Additionally, the Defendants claim dependents who do not actually qualify as dependents on customers' tax returns, and then claim Head of Household filing status to increase the customers' refunds through both the false filing status and fraudulent EITC claim based on the bogus dependents.

### Bogus Education Credits

129.    The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American Opportunity education credit, on customers' federal

income tax returns. Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to reduce their customers' taxable income and generate a larger bogus refund.

### Customers 14 and 15 (continued)

130. For example, as discussed above in paragraphs 70-73, Chipungu prepared the 2014 federal income tax return of Customers 14 and 15.

131. Customer 14 attended college in 2014, graduating at the end of the spring semester. Customer 14 incurred $100 in out-of-pocket costs for college in 2014.

132. Chipungu falsely reported on the Form 8863 "Education Credits (American Opportunity and Lifetime Learning Credits)" attached to the 2014 tax return of Customers 14 and 15 that Customer 14 incurred education-related expenses in the amount of $4,000. Customer 14 did not provide this inflated amount of education-related expenses to Chipungu. Chipungu then claimed a bogus American Opportunity education credit in the amount of $1,000 on the tax return. As noted above in paragraph 73, this fabricated education credit falsely increased the tax refund claimed on the 2014 tax return of Customers 14 and 15.

### Customers 23 and 24

133. Chipungu prepared the 2014 federal income tax return of Customers 23 and 24 of Vero Beach, Florida. In 2014, Customer 23 worked at a restaurant and Customer 24 worked for the State of Florida and at a retail clothing store. Customers 23 and 24 did not incur any job-related expenses. Customer 24 attended college part-time in 2014.

134.     Chipungu falsely reported on the Form 8863 "Education Credits (American Opportunity and Lifetime Learning Credits)" attached to the 2014 tax return of Customers 23 and 24 that Customer 24 attended college at least half-time in 2014 and that she incurred education-related expenses in the amount of $4,000.  Customer 24 did not incur such education-related expenses and did not provide this number to Chipungu.  Chipungu claimed a bogus American Opportunity education credit in the amount of $1,000 on the tax return.

135.     Customers 23 and 24 received wages totaling $55,636 in 2014.  Chipungu falsely reported on the Form Schedule A that Customers 23 and 24 incurred unreimbursed employee business expenses in the amount of $31,416, or over 56% of their combined wages, in 2014. The filed tax return did not include a Form 2106, used to identify and describe the unreimbursed employee business expenses claimed on the tax return. Of the purported $31,416 in unreimbursed employee business expenses claimed, the filed return only identified purported expenses for uniforms in the amount of $2,700 and a cell phone in the amount of $1,640. Customers 23 and 24 did not provide any of these claimed expenses to Chipungu and did not incur $31,416 in job-related expenses in 2014.

136.     As a result of the bogus education credit and fabricated job-related expenses, Chipungu claimed a bogus refund of $4,692 on the 2014 tax return of Customers 23 and 24.

### Unconscionable and Undisclosed Fees

137.     The Defendants charge unconscionably high fees to prepare tax returns, which are typically charged without customers' knowledge.  The Defendants charge these high fees to prepare and file false tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return.

138.    The Defendants intentionally deceive customers regarding the fees charged for the preparation of tax returns. The Defendants do not disclose the full amount of the fee and, when having the customer sign forms showing the fee, cover the fee with a hand or a piece of paper and do not explain to the customer what the customer is signing.

139.    The Defendants charge additional fees for each form and schedule (such as a Schedule C or a Form 8863 for an education credit) attached to the Form 1040 tax return. The Defendants charge separate fees for forms and schedules such as the electronic filing authorization (Form 8879) which is required for e-filing, the EITC qualifying child form (Schedule EIC), and the related EITC due diligence checklist (Form 8867), which must be completed in connection with a claim for the EITC. These fees result in a total tax return preparation fee much higher than the amount advertised, often $1,000 or more.

140.    The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants to prepare and file false or fraudulent tax returns claiming excessive refunds based on bogus claims and associated forms and schedules.

141.    Because the Defendants target low-income individuals, the high fees frequently can pose a significant financial hardship for customers. Customers may be required to pay back the improper refunds that they receive. Because the Defendants deduct their high fees directly from her customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees. Thus, customers are then out-of-pocket the high fees that the Defendants charged. Additionally, the Defendants' fees are unconscionable for the basic – albeit fraudulent – tax returns being prepared for these customers, who are often eligible for free tax return preparation and electronic filing elsewhere.

142.    The Defendants also routinely and intentionally fail to disclose to customers all fees charged. The Defendants present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing. Alternatively, the Defendants tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent. Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

143.    The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund. By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

144.    The Defendants' practice of charging unconscionable and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

### Failure to Provide Customers with Copies of their Completed Tax Returns in Violation of 26 U.S.C. § 6107(a)

145.    The Defendants fail to provide customers with copies of their completed tax returns. The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer. For example, a customer who is provided a copy of a tax return showing the actual tax refund claimed is able to determine the amount of fees that the

Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed on the tax return. The Defendants' failure to provide a copy of a customer's completed tax return is part of the strategy to conceal the actual fees from her customers.

146.    Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

147.    Customers who do receive a copy of the tax return often receive only the first two pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C, Forms Schedule A, and Forms 2106, "Employee Business Expenses." This is because the Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms. As noted above, the Defendants failed to provide copies of the completed tax returns to Customers 1 and 2, Customers 3 and 4, Customers 5 and 6, Customer 8, Customers 11 and 12, Customer 13, Customers 14 and 15, Customer 16, Customer 18, and Customers 19 and 20.

### Failure to Identify the Actual Preparer of Customers' Tax Returns in Violation of 26 U.S.C. §§ 6695(b) and 6695(c)

148.    The Defendants prepared tax returns for customers on which they did not identify themselves as the paid preparer. For example, Customers 5 and 6 and Customer 7, discussed above, identified an individual other than Chipungu as the paid preparer, even though the tax returns identify Chipungu as the paid preparer.

149.    A tax return preparer who fails to sign a tax return that he or she preparers violates 26 U.S.C. § 6695(b). A tax return preparer, or employer of a tax return preparer, who

fails to report an identifying number of the tax return preparer or the employer on a tax return that the preparer or an employee prepares, violates 26 U.S.C. § 6695(c).

150.   Failing to identify themselves as the paid preparers on tax returns is part of the Defendants' attempts to conceal their tax return preparation activities from government investigators.

### Harm Caused by the Defendants

151.   The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants and many of their preparers prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

152.   Defendants' conduct (and that of their preparers) harms the United States Treasury by causing lost tax revenue. During the IRS's investigation of the Defendants, the IRS examined 31 tax returns for tax year 2014 identifying Chipungu as the paid preparer and 29 tax returns for tax year 2015 identifying Chipungu as the paid preparer. Of the 31 tax returns for 2014, the IRS made adjustments to all 31 tax returns, with a total tax deficiency of $146,939, or an average tax deficiency of $4,739.97 per examined return. Of the 29 tax returns for 2015, the IRS made adjustments to all 29 tax returns, with a total tax deficiency of $154,821, or an average tax deficiency of $5,338.34 per examined return.

153.   The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax

returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

154.    Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants and their employees acting at their direction and with their knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants, and their employees acting at their direction and with their knowledge and consent.

155.    The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting her false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers. Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

156.    The Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law. Customers often have their returns prepared at the Defendants' tax preparation stores because

they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

157.    Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

158.    The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers.  An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

## Count I
### Injunction under 26 U.S.C. § 7407

159.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

    a.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b.     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c.     Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

d.     Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

e.     Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

160.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

161.    Ndaiziwei Kaya Chipungu, as shown above in paragraphs 1 through 158, is a tax return preparer who, individually and through Society Financial Solutions, LLC, has repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Ndaiziwei Kaya Chipungu also advises, instructs, directs, and causes her preparers and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions. Accordingly, Ndaiziwei Kaya Chipungu knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

162.    Ndaiziwei Kaya Chipungu, and those acting in concert with her and at her direction, has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate her customers' liabilities based on

unrealistic, frivolous and reckless positions. Ndaiziwei Kaya Chipungu, through the actions described above, also recklessly or intentionally disregards IRS rules or regulations.

163.    Ndaiziwei Kaya Chipungu, and those acting in concert with her and at her direction, has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011). Not only does Ndaiziwei Kaya Chipungu fail to conduct proper due diligence or comply with the due diligence requirements, but she also advises, encourages, and causes her preparers and employees to circumvent the due diligence requirements and to ignore or disregard the information provided by customers.

164.    Ndaiziwei Kaya Chipungu's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and her willingness to falsify information to obtain the EITC for her customers shows a reckless and/or intentional disregard of IRS rules and regulations.

165.    Ndaiziwei Kaya Chipungu, and those acting in concert with her and at her direction, has continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Ndaiziwei Kaya Chipungu, and those acting in concert with her and at her direction, has not conducted, let alone documented, the required due diligence procedures.

166.    Ndaiziwei Kaya Chipungu fails to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

167.    Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC also fail to comply with 26 U.S.C. §§ 6695(b) and 6695(c), which require that a tax return preparer and a tax return preparation firm identify the actual paid preparer of the tax return.

168.    Ndaiziwei Kaya Chipungu's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

169.    Ndaiziwei Kaya Chipungu's continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

170.    Ndaiziwei Kaya Chipungu, and those acting in concert with her and at her direction, has continuously and repeatedly guaranteed refunds to customers and guaranteed the allowance of tax credits, including but not limited to the EITC. This conduct falls within 26 U.S.C. § 7407(b)(1)(C), and thus is subject to an injunction under 26 U.S.C. § 7407.

171.    If Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

172.    Ndaiziwei Kaya Chipungu's and Society Financial Solutions, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Ndaiziwei Kaya Chipungu's and Society Financial Solutions, LLC's interference with the proper administration of the internal revenue laws. Accordingly, Ndaiziwei Kaya Chipungu

and Society Financial Solutions, LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

### Count II
### Injunction under 26 U.S.C. § 7408

173.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

174.    Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

175.    Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, through the actions detailed above in paragraphs 1 through 158, caused the presentation and preparation of false, fraudulent, and abusive tax returns and other documents. Ndaiziwei Kaya Chipungu prepares, assists, and/or advises with respect to the presentation and preparation of federal tax returns for customers that she knows will understate their correct tax liabilities, because Ndaiziwei Kaya Chipungu knowingly prepares, assists, and/or advises with respect to the presentation and preparation of returns claiming bogus expenses and deductions. Ndaiziwei Kaya Chipungu procured and assisted the preparation of false and fraudulent tax returns by filing and

encouraging the filing of tax returns they knew were false or fraudulent, and by employing, training, and supervising tax return preparers engaging in tax fraud. Ndaiziwei Kaya Chipungu has thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

176.    Ndaiziwei Kaya Chipungu is likely to continue violating the law absent an injunction. Tax return preparation is Ndaiziwei Kaya Chipungu's primary source of revenue. To maximize that income, Ndaiziwei Kaya Chipungu prepares, and instructs and directs her preparers and employees to prepare, false or fraudulent returns. That conduct, in turn, gives Ndaiziwei Kaya Chipungu a competitive edge over law-abiding preparers. It also provides a means for Ndaiziwei Kaya Chipungu to further exploit her customers by charging them unconscionably high fees, while Ndaiziwei Kaya Chipungu fraud simultaneously and callously exposes her customers to possible civil and criminal liability.

177.    If the Court does not enjoin Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. The preparation of tax returns claiming improper expenses and deductions by Ndaiziwei Kaya Chipungu, and those acting in concert with her and at her direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

178.    Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

179.    Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, through the actions described above in paragraphs 1 through 158, including, but not limited to, intentionally

48

understating their customers' tax liabilities and charging unconscionable and undisclosed fees for

the preparation of federal tax returns that intentionally understate their customers' tax liabilities,

have engaged in conduct that substantially interferes with the enforcement of the internal

revenue laws.

180.    Unless enjoined, Ndaiziwei Kaya Chipungu and Society Financial Solutions,

LLC, and those acting in concert with them and at their direction, are likely to continue to

engage in such improper conduct and interfere with the enforcement of the internal revenue laws.

If Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC are not enjoined from

engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by

providing federal income tax refunds to individuals not entitled to receive them.

181.    While the United States will suffer irreparable injury if Ndaiziwei Kaya Chipungu

and Society Financial Solutions, LLC are not enjoined, the Defendants will not be harmed by

being compelled to obey the law.

182.    Enjoining Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC is in

the public interest because an injunction, backed by the Court's contempt powers if needed, will

stop the Defendants' illegal conduct and the harm it causes the United States and the Defendants'

customers.

183.    The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

### Count IV
### Disgorgement under 26 U.S.C. § 7402(a)
### Necessary to Enforce the Internal Revenue Laws

184.    Section 7402 of the Internal Revenue Code authorizes a district court to issue

orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the

internal revenue laws.

185.    Ndaiziwei Kaya Chipungu's and Society Financial Solutions, LLC's conduct, described above in paragraphs 1 through 158, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them. Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

186.    Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

187.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.    That the Court find that Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.    That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC from acting as federal tax return preparers;

C.     That the Court find that Ndaiziwei Kaya Chipungu and Society Financial

Solutions, LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that

injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.     That the Court find that Ndaiziwei Kaya Chipungu and Society Financial

Solutions, LLC have engaged in conduct that interferes with the enforcement of the internal

revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct

pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.     That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a

permanent injunction prohibiting Ndaiziwei Kaya Chipungu and Society Financial Solutions,

LLC, and all those in active concert or participation with them, from:

(1)    acting as federal tax return preparers or requesting, assisting in, or
       directing the preparation or filing of federal tax returns, amended returns,
       or other related documents or forms for any person or entity other than
       themselves;

(2)    preparing or assisting in preparing federal tax returns that they know or
       reasonably should know would result in an understatement of tax liability
       or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. §
       6694;

(3)    owning, operating, managing, working in, investing in, providing capital
       or loans to, receiving fees or remuneration from, controlling, licensing,
       consulting with, or franchising a tax return preparation business;

(4)    training, instructing, teaching, and creating or providing cheat sheets,
       memoranda, directions, instructions, or manuals, pertaining to the
       preparation of federal tax returns;

(5)    maintaining, assigning, holding, using, or obtaining a Preparer Tax
       Identification Number (PTIN) or an Electronic Filing Identification
       Number (EFIN);

(6)    engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694,
       6695, 6701, or any other penalty provision in the Internal Revenue Code;
       and

     (7)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

     F.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to immediately and permanently close all tax return preparation stores that they own directly or through any other entity, and whether those stores do business as Society Financial Solutions, SFS Tax Services, Society Financial Group, LLC, or under any other name;

     G.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information has been removed), electronics, and furniture, for all tax return preparation stores that Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC own directly or through any other entity, and whether those stores do business as Society Financial Solutions, SFS Tax Services, Society Financial Group, LLC, or under any other name;

     H.     That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, directly or through any other entity, from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, or any other tax return preparation business to which they or any entity under their control is a party;

     I.     That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, directly or through any other entity, from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC and any other business or name (including but not limited to Society Financial Solutions, SFS Tax Services, and Society

Financial Group, LLC) through which they, or those acting at their direction, have at any time since 2012 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC or any other business or entity through which Ndaiziwei Kaya Chipungu prepares tax returns or owns or franchises a tax return preparation business, a list of customers or any other customer information for customers for whom Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, and any other business or name (including but not limited to Society Financial Solutions SFS Tax Services, and Society Financial Group, LLC) through which Ndaiziwei Kaya Chipungu, or those acting at her direction, have at any time since 2012 prepared a tax return; and (3) selling to <u>any</u> individual or entity any proprietary information pertaining to Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, and any other business or name (including but not limited to Society Financial Solutions, SFS Tax Services, and Society Financial Group, LLC) through which Ndaiziwei Kaya Chipungu, or those acting at her direction, have at any time since 2012 prepared a tax return;

J.     That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to disgorge to the United States the gross receipts (the amount of which is to be determined by the Court) that Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC received (in the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that make or report grossly incompetent, negligent, reckless, and/or fraudulent claims, deductions, credits, income, expenses, or other information that results in the understatement of taxes, prepared since 2012 by Ndaiziwei Kaya Chipungu

and Society Financial Solutions, LLC, and at any tax preparation store franchised, owned, or managed by Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC;

K.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to contact, within 30 days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Society Financial Solutions, SFS Tax Services, and Society Financial Group, LLC) prepared federal tax returns or claims for a refund from 2012 and continuing through this litigation to inform them of the permanent injunction entered against them, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

L.     That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Society Financial Solutions, SFS Tax Services, and Society Financial Group, LLC) prepared federal tax returns or claims for a refund since 2012;

M.     That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address,

e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC since 2012;

N.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC provided a copy of the Court's order;

O.      That the Court retain jurisdiction over Ndaiziwei Kaya Chipungu and Society Financial Solutions, LLC and over this action to enforce any permanent injunction entered against them;

P.      That the United States be entitled to conduct discovery to monitor Ndaiziwei Kaya Chipungu's and Society Financial Solutions, LLC's compliance with the terms of any permanent injunction entered against them; and

Q. That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: June 21, 2018

MARIA CHAPA LOPEZ
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

DANIEL A. APPLEGATE
ALISON A. YEWDELL
JARED S. WIESNER
SAMUEL P. ROBINS
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-8180
Fax: (202) 514-6770
daniel.a.applegate@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel A. Applegate, U.S. Department of Justice, Tax Division
P.O. Box 7238, Ben Franklin Stn., Washington, D.C. 20044
202-353-81810

## DEFENDANTS

NDAIZIWEI KAYA CHIPUNGU and
SOCIETY FINANCIAL SOLUTIONS, LLC

County of Residence of First Listed Defendant   Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

|  | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. sections 7407, 7408, and 7402(a)

Brief description of cause:
Suit for permanent injunction barring from preparing tax returns and disgorgement of ill-gotten gains

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
06/21/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____