UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

                   **Plaintiff,**

**-vs-**                                      **Case No. 6:18-cv-982-Orl-18GJK**

**NDAIZIWEI KAYA CHIPUNGU and
SOCIETY FINANCIAL SOLUTIONS, LLC,**

                   **Defendants.**

_____

**REPORT AND RECOMMENDATION**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **UNITED STATES' MOTION FOR DEFAULT JUDGMENT AGAINST NDAIZIWEI KAYA CHIPUNGU AND SOCIETY FINANCIAL SOLUTIONS, LLC (Doc. No. 14)** |
| **FILED:** | December 19, 2018 |
| **THEREON** it is **RECOMMENDED** that the **MOTION** be **GRANTED.** | |

**I.    BACKGROUND.**

On June 22, 2018, the United States of America (the "Government") filed the Complaint against Ndaiziwei Kaya Chipungu ("Chipungu") and Society Financial Solutions, LLC ("Society Financial") (collectively, the "Defendants") seeking to permanently enjoin the Defendants from

the following:

> (1) acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;
>
> (2) preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;
>
> (3) owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;
>
> (4) training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;
>
> (5) maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);
>
> (6) engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and
>
> (7) engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

Doc. No. 1 at 50-51. The Government also asks that the Court, among other things, order Defendants to disgorge to it the gross receipts that they received for preparing illegal tax returns. *Id.* at 53-54. On June 26, 2018, Society Financial was properly served. Doc. No. 7. On June 30, 2018, Chipungu was properly served. Doc. No. 8. The Defendants have failed to plead or otherwise defend this action. On September 19, 2018, the Clerk entered defaults against Defendants pursuant to Rule 55(a), Federal Rules of Civil Procedure. Doc. Nos. 10, 11.

On December 19, 2018, the Government filed a motion for default judgment against

Defendants (the "Motion"). Doc. No. 14. The Motion was served upon the Defendants by first class U.S. mail. *Id.* at 26. The Defendants did not file a response to the Motion.

In the Motion, the Government states that "Chipungu has been preparing tax returns for compensation since at least 2009." *Id.* at 2. In 2011, Chipungu incorporated Kaya Chipungu, LLC, and was the sole member and registered agent. *Id.* Chipungu changed the LLC's name several times, eventually changing it to Society Financial on September 26, 2012. *Id.* The Government alleges that Chipungu created Society Financial "to own a tax preparation store through the entity." *Id.* The Government alleges in the Complaint that "Chipungu and Society Financial . . . operate a tax preparation store in Winter Park, Florida under the names Society Financial Solutions, SFS Tax Services, and Society Financial Group, LLC . . . ." Doc. No. 1 at ¶ 8. "Chipungu prepares tax returns for customers and oversees employees who prepare tax returns." *Id.* From 2011 through 2018, "Chipungu personally prepared at least 1,081 tax returns . . . ." Doc. No. 14 at 2.

The Government generally alleges that Defendants prepare tax returns for customers with low to moderate incomes that "generate bogus refunds . . . ." Doc. No. 1 at ¶¶ 17, 18. Defendants intentionally charge the customers exorbitant fees for preparing the fraudulent tax returns and hide the fees from their customers. *Id.* at ¶¶ 19, 137-39, 142. Defendants also fail to provide their customers with copies of their completed tax returns. *Id.* at ¶¶ 145, 147. The Government maintains that Defendants knew or should have known of the falsity of the tax returns that they prepared. *Id.* at ¶ 161. The Government alleges that Defendants' unlawful tax preparation practices include the following:

>   a. Fabricating itemized deductions, including for unreimbursed employee business expenses and charitable contributions;
>
>   b. Making false claims for the Earned Income Tax Credit ["EITC"];

> c. Circumventing due diligence requirements in order to unlawfully maximize the ["EITC"];
>
> d. Improperly claiming false filing status, such as Head of Household;
>
> e. Fabricating businesses and related business income and expenses;
>
> f. Claiming education credits to which their customers are not entitled;
>
> g. Failing to identify the actual paid preparer of the tax return;
>
> h. Failing to provide customers with a copy of the completed tax return; and
>
> i. Charging deceptive and unconscionable fees.

*Id.* at ¶ 21.

According to the Government, the IRS examined 31 tax returns for 2014 and 29 tax returns for 2015 prepared by Chipungu. *Id.* at ¶ 152. All required adjustments, resulting in tax deficiencies of $146,939 for the 2014 returns and $154,821 for the 2015 tax returns. *Id.*

One of the ways Defendants obtained tax refunds was to "mak[e] false claims for purported unreimbursed employee business expenses." *Id.* at ¶ 23. Defendants would claim inflated amounts for mileage for commuting to and from work, clothes bought to wear to work, and cell phones, none of which are legitimate deductions. *Id.* at ¶¶ 23-24. A second method Defendant employed to obtain inflated tax refunds was to artificially increase or decrease the customers' incomes so that the customers would receive close to the maximum EITC. *Id.* at ¶¶ 77-83. Defendants altered the income by "reporting non-existent businesses on bogus Forms Schedule C." *Id.* at ¶ 84. Depending on whether the goal was to raise or lower the customers' incomes, Defendants would either "report substantial business income, but little or no expenses [or] . . . report substantial expenses, but little or no income." *Id.* The Government alleges a number of specific instances of

this conduct. *Id.* at 9-23, 26-35, 36-37. The Government's uncontradicted averments are sufficient to prove that Defendants falsely claimed the EITC for customers; falsely claimed on Forms Schedule C that customers had non-existent businesses to falsely lower or raise the reported taxable income; reported fabricated unreimbursed employee business expenses to falsely lower customers' reported taxable income; charged unconscionably high tax preparation fees, and failed to provide their customers with completed tax returns.

The Government alleges that the Defendants caused harm to the Government, their customers, legitimate tax return preparers, and to the public. *Id.* at ¶¶ 151-57. The Government contends that it is harmed by the lost tax revenue and having to devote limited resources to detecting Defendants' false claims and collecting the lost tax revenue. *Id.* at ¶¶ 152, 156. Defendants' customers are harmed because, in addition to the exorbitant fees Defendants charged, the fraudulent returns expose them to civil and criminal penalties and repayment of the fraudulently-obtained refunds. *Id.* at ¶¶ 153-54. Legitimate tax return preparers are harmed because they are losing business due to Defendants' claims of producing higher tax refunds. *Id.* at ¶ 156. Finally, the public is harmed "by [Defendants] undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws." *Id.* at ¶ 157.

Based on the allegations set forth above, the Government maintains that it is entitled to a permanent injunction pursuant to 26 U.S.C. §§ 7407, 7408, and 7402(a), as set forth in Counts I, II, and III, respectively. *Id.* at 43-49. Under Count IV, the Government also asks for a disgorgement pursuant to 26 U.S.C. § 7402(a) of the gross receipts that Defendants received for preparing the fraudulent tax returns. *Id.* at 49-50.

The Government attaches the Declaration of Joseph Conroy (the "Declaration"), a Revenue Agent employed by the IRS ("Agent Conroy"), to the Motion. Doc. No. 14-2. The allegations in

the Complaint are supported by the Declaration. *Id.* Generally, Agent Conroy developed the factual allegations in the Complaint through the IRS's audit of 60 tax returns prepared by Chipungu for tax years 2014 and 2015 and interviews with the taxpayers of those tax returns. *Id.*

In the Motion, the Government requests a default judgment against Defendants. Doc. No. 14 at 1. Furthermore, the Government requests that the Court find that Defendants continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694(a), (b), and 6695(g), and that, pursuant to 26 U.S.C. § 7407, an injunction prohibiting such conduct would not be sufficient to prevent Defendants' interference with the proper administration of the tax laws and that Defendants should be permanently enjoined from acting as tax return preparers and working, owning, or investing in a tax preparation business. *Id.* at 14-16. The Government argues that it is entitled to an injunction under 26 U.S.C. § 7408 because Defendants engaged in conduct subject to a penalty under 26 U.S.C. § 6701, including preparing false Schedules A and C and bypassing EITC due diligence requirements. *Id.* at 13-14. Finally, the Government contends that it is entitled to an injunction and disgorgement under 26 U.S.C. § 7402. *Id.* at 17-24.

## II. THE LAW.

### A. Default Judgment.

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the clerk enters a default. Fed. R. Civ. P. 55(a). Second, after obtaining a clerk's default, the plaintiff must move for a default judgment. Fed. R. Civ. P. 55(b). Before entering a default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed

to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

**B.    26 U.S.C. § 7407.**

In the Motion, the Government argues that it is entitled to injunctive relief pursuant to 26 U.S.C. § 7407 because Defendants engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, and the facts of this case establish that an injunction enjoining Defendants from acting as tax return preparers is necessary to prevent their continued interference with the proper administration of the internal revenue laws. Doc. No. 14 at 14-16. Section 7407(b)(1)(A) provides that the Court may enjoin a tax return preparer from further engaging in such conduct if the Court finds that the preparer "engaged in any conduct subject to penalty under section 6694 or 6695. . .

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

." Section 7407 further provides that "[i]f the court finds that a tax return preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of this subsection and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as a tax return preparer." 26 U.S.C. § 7407(b)(2).

Section 6694(a) penalizes a tax return preparer who submits a return or claim for refund that contains an understatement of tax liability due a to a position which is unrealistic on the merits and the tax return preparer knew or should have known the position was unrealistic. 26 U.S.C. § 6694(a). Section 6694(b) penalizes a tax return preparer who submits a return or claim for a refund that contains a willful or reckless understatement of tax liability. 26 U.S.C. § 6694(b).

Section 6695(g) provides penalties for:

> Any person who is a tax return preparer with respect to any return or claim for refund who fails to comply with due diligence requirements imposed by the Secretary [of the Treasury] by regulations with respect to determining—
> (1) eligibility to file as a head of household (as defined in section 2(b)) on the return, or
> (2) eligibility for, or the amount of, the credit allowable by [the EITC.]

26 U.S.C. § 6695(g). Treasury Regulation 1.6695-2(b)(3) provides:

> The tax return preparer must not know, or have reason to know, that any information used by the tax return preparer in determining the taxpayer's eligibility to file as head of household or in determining the taxpayer's eligibility for, or the amount of, any credit [under the EITC] and claimed on the return or claim for refund is incorrect. The tax return preparer may not ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if a reasonable and well-informed tax return preparer knowledgeable in the law would conclude that the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete. The tax return preparer must also contemporaneously document in the preparer's paper or

8

> electronic files any inquiries made and the responses to those inquiries.

Thus, the tax return preparer must not know or have reason to know that any information used by the tax return preparer in determining the taxpayer's eligibility for, or the amount of, the EITC is incorrect, and must not ignore the implications of information furnished to, or know, and must make reasonable inquiries if the information furnished to the or known by the preparer appears to be incorrect, inconsistent, or incomplete. 26 U.S.C. § 6695(g); Treas. Reg. § 1.6695-2(b)(3).

### C. 26 U.S.C. § 7408

The Government argues that it is entitled to injunctive relief pursuant to 26 U.S.C. § 7408 because Defendants engaged in conduct subjecting them to a penalty under 26 U.S.C. § 6701 and injunctive relief is appropriate to prevent the conduct from recurring. Doc. No. 14 at 16-17. Section 7408 provides that the Court may enjoin people from further engaging in conduct subjecting them to a penalty under § 6701 if "injunctive relief is appropriate to prevent recurrence of such conduct . . . ."

Section 6701(a) imposes penalties on any person:

> (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
> (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
> (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person . . . .

Thus, a tax return preparer must not assist in preparing a tax return knowing that information in the return results in understating the taxes owed. 26 U.S.C. § 6701(a).

### D. 26 U.S.C. § 7402.

The Government maintains that it is also entitled to a permanent injunction and

disgorgement pursuant to 26 U.S.C. § 7402. Section 7402(a) provides:

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

Without a permanent injunction preventing Defendants from continuing to prepare tax returns, the Government maintains it will suffer an irreparable harm, it has no adequate legal remedy, the injuries to it and Defendants' customers outweigh any harm to Defendants caused by an injunction, and the public interest is served by a permanent injunction. Doc. No. 14 at 18-20. To be entitled to a permanent injunction, a plaintiff must demonstrate:

> (1) That it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006). Thus, the Government argues it is entitled to a permanent injunction enjoining Defendants from engaging in or offering to engage in tax return preparation.

The Government also argues that it is entitled to disgorgement under 26 U.S.C. § 7402. Doc. No. 14 at 20-24. "[D]isgorgement in the amount of a defendant's 'ill-gotten gains' constitutes a 'fair and equitable' remedy as it reminds the defendant of its legal obligations, serves to deter future violations of the Internal Revenue Code, and promotes successful administration of the tax laws." *United States v. Mesadieu*, 180 F. Supp. 3d 1113, 1119 (M.D. Fla. 2016). "If entitled to

10

disgorgement, the government need only produce a reasonable approximation of the amount Defendants received from their illegal activities." *United States v. Erilus*, No. 6:17-CV-2060-ORL-28TBS, 2018 WL 3727349, at *6 (M.D. Fla. July 27, 2018), *report and recommendation adopted*, No. 6:17-CV-2060-ORL-28TBS, 2018 WL 3854798 (M.D. Fla. Aug. 14, 2018).

### III.  APPLICATION.

Having reviewed the Complaint, the Motion, and the documents attached thereto, and in the absence of an answer or any intent to defend on the part of Defendants, it is recommended that the Court find the Government's allegations of fact are well-pled. It is further recommended that the Court find that the Government has demonstrated that it will suffer an irreparable harm if a permanent injunction is not issued, monetary damages are inadequate to compensate the Government for the continuing harm, the balance of equities weighs in favor of issuing a permanent injunction, and the public's interest will not be disserved by issuance of the injunction.

It is also recommended that the Court order a disgorgement. The well-pled allegations of the Complaint establish that Defendants engaged in business practices that violate the Internal Revenue Code, that the Government is entitled to a permanent injunction, and that Defendants unjustly enriched themselves through their wrongful conduct. Therefore, the Court has the power to compel the disgorgement of Defendants' ill-gotten gains.

The next issue is whether judgment should be entered against Defendants in the amount of $487,879.24, as suggested by the Government. Doc. No. 14 at 24. An exact amount of disgorgement is not required. *United States v. Stinson*, 239 F. Supp. 3d 1299, 1327 (M.D. Fla. 2017), *motion for relief from judgment granted*, No. 6:14-CV-1534-ORL-22TBS, 2017 WL 2493239 (M.D. Fla. May 21, 2017), *and aff'd*, 729 F. App'x 891 (11th Cir. 2018). But, "[t]here must be a 'relationship between the amount of disgorgement and that amount of ill-gotten gain.'"

*Id.* (quoting *C.F.T.C. v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999)).

The government bases its disgorgement amount on the "tax preparation fees for the Defendants' preparation of the following three specific and distinct categories of false tax returns that claim: unreimbursed employee business expenses reported on a Schedule A; self-employed business income and/or expenses reported on a Schedule C; and the [EITC]." Doc. 14 at 23-24. The Government offers the declaration of paralegal Amanda Reinken who obtained records from EPS Financial, Inc., including a tax preparation fee report for the EFIN associated with Defendants. Doc. No. 14-3 at ¶ 3. Ms. Reinken declares that Defendants received tax preparation fees from tax returns that "claimed self-employed business income and/or expense reported on a Form Schedule C, the [EITC], and unreimbursed employee business expenses on a Form Schedule A" totaling $487,879.24 in 2013 through 2018. *Id.* at ¶¶ 12, 13. Ms. Reinken received the documents upon which she bases her declaration in electronic format and combined them with Electronic Fraud Detection System ("EFDS") reports for 2013 through 2018, then cross-referenced names and social security numbers and created one spreadsheet for tax returns filed in 2013 through 2018 that contained a Schedule A, a Schedule C or claimed an EITC. *Id.* at ¶¶ 6-10. Ms. Reinken's analysis was limited in that she was unable:

> [T]o identify the fee for every customer identified on the IRS EFDS reports whose tax return filed with an EFIN associated with the Defendants described above in 2013, 2014, 2015, 2016, 2017, or 2018 claimed a[n] unreimbursed employee business expenses (EBE) on Forms Schedule A, business income and/or expenses on Forms Schedule C, or the [EITC]. The records from EPS Financial, Inc. did not show the amount of the fee disbursed for every tax return identified on the IRS EFDS reports for the Defendants.

*Id.* at ¶ 14.

Based upon this record, given that every one of the original sixty returns reviewed by the

Government required adjustment, the Government produced a reasonable approximation of Defendants' ill-gotten gains. It is recommended that the district court enter judgment requiring Defendants, jointly and severally, to disgorge $487,879.24 to the government.

## IV.   CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Court:

1) **GRANT** the Motion (Doc. No. 14);

2) Enter a permanent injunction against Defendants, in the form proposed by the Government (Doc. 14-6); and

3) Direct the Clerk to enter judgment against Defendants, jointly and severally, in the amount of $487,879.24, and close this case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on January 25, 2019.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party